The Honorable Michael R. O'Neal State Representative, 104th District Box 2977 Hutchinson, Kansas 67504-2977
Dear Representative O'Neal:
You request our opinion regarding the authority of wildlife and parks officers to search "live-aboard" vessels. Specifically you question "whether owners of `live-aboard' vessels are entitled to the same constitutional protections against searches and seizures as are possessed by owners of residential real estate."
The short answer to your question is no, owners of live-aboard vessels generally do not have the same constitutional protections against searches and seizures as do owners of residential real estate. Rather, seaworthy vessels are generally regarded as vehicles for purposes of thefourth amendment to the United States constitution and section 15 of the Kansas bill of rights. Thus the exceptions to the warrant requirement for vehicles would also generally apply to vessels. We believe this is true even if the vessel is equipped for use as a residence.
In California v. Carney, 471 U.S. 386, 85 L.Ed.2d 406, 105 S.Ct. 2066
(1983) the United States Supreme Court applied the vehicle exception to a motor home, even though the "vehicle possessed some, if not many of the attributes of a home." Carney, 85 L.Ed.2d at 414. We find compelling the similarities of this case to the question at hand:
 "The Fourth Amendment protects the `right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer. There are, of course, exceptions to the general rule that a warrant must be secured before a search is undertaken; one is the so-called `automobile exception' at issue in this case. This exception to the warrant requirement was first set forth by the Court 60 years ago in Carroll v. United States, 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280, 39 ALR 790 (1925). There, the Court recognized that the privacy interests in an automobile are constitutionally protected; however, it held that ready mobility of the automobile justifies a lesser degree of protection of those interests. The Court rested this exception on a long-recognized distinction between stationary structures and vehicles:
 "`[T]he guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' Id., at 153, 69 L.Ed. 543, 45 S.Ct. 280, 39 ALR 790 (emphasis added).
 "The capacity to be `quickly moved' was clearly the basis of the holding in Carroll, and our cases have consistently recognized ready mobility as one of the principal bases of the automobile exception. . . .
 "However, although ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception. The reasons for the vehicle exception, we have said, are twofold. . . .
 "Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception. . . .
 "These reduced expectations of privacy derive not from the fact that the area to be searched is in plain view, but from the pervasive regulation of vehicles capable of traveling on the public highways. . . .
 "In short, the pervasive schemes of regulation, which necessarily lead to reduced expectations or privacy, and the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met." Carney, 85 L.Ed.2d at 412-414.
Although the respondent in Carney argued that his vehicle should be distinguished from other vehicles subject to the vehicle exception because it was capable of functioning as a home, the Court declined to make that distinction.
 "Our application of the vehicle exception has never turned on the other uses to which a vehicle might be put. The exception has historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation." Carney, 85 L.Ed.2d at 415.
Vessels on the water are generally readily mobile and are used for transportation. In addition, vessels in Kansas are subject to pervasive and continuing regulation, as are automobiles. See K.S.A. 32-1101 etseq. The tenth circuit court of appeals, applying the vehicle exception and the Carney test, has held that a warrantless search of a houseboat does not necessarily violate the fourth amendment. United States v.Hill, 855 F.2d 664, 667-668 (1988). We therefore conclude that vessels, whether or not capable of use as a residence, are treated as vehicles forfourth amendment purposes if readily mobile or in a setting that objectively indicates use for transportation.
While we are comfortable stating the rule in generalities, we caution that whether a warrant is required in a particular situation will depend on the specific facts and circumstances. If a particular vessel "is situated in a way or place that objectively indicates that it is being used as a residence," [Carney, 85 L.Ed.2d at footnote 3] the vehicle exception may not be applicable. The Court has listed factors to be considered in determining whether a warrant would be required in such circumstances, including the vessel's location, whether the vessel is readily mobile, whether it is licensed, and whether it is connected to utilities. Id.
In addition to the likely application of the vehicle exception allowing warrantless searches when there is probable cause to believe that a crime has been, or is being, committed, there may also be circumstances in which an officer may detain a vessel on grounds of reasonable suspicion that it is unlicensed, over capacity, etc. See United States v.Demanett, 629 F.2d 862 (3d Cir. 1980), cert. denied 450 U.S. 910,67 L.Ed.2d 333, 101 S.Ct. 1347 (1981); United States v. Odneal,565 F.2d 598 (9th Cir. 1977), cert. denied 435 U.S. 952, 55 L.Ed.2d 803,98 S.Ct. 1581 (1978). This would be analogous to a Terry stop. SeeTerry v. Ohio, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968); Adamsv. Williams, 407 U.S. 143, 32 L.Ed.2d 612, 92 S.Ct. 1921 (1972); UnitedStates v. Brignoni-Ponce, 422 U.S. 873, 45 L.Ed.2d 607, 95 S.Ct. 2574
(1974); United States v. Cortez, 449 U.S. 411, 66 L.Ed.2d 621,101 S.Ct. 690 (1981). If the officer develops probable cause during such a stop, then the rules become those recited above.
There are a myriad of other possible exceptions to the rule requiring probable cause and/or a warrant. See Ringle, Searches and Seizures,Arrests and Confessions vol. 1, sec. 11 (release # 30, May 1993). The United States Supreme Court has further held that even reasonable suspicion is not required for document and safety searches by the Coast Guard of vessels on the high sea. United States v. Villamonte-Marquez,462 U.S. 579, 77 L.Ed.2d 22, 103 S.Ct. 2573 (1983).
In conclusion, vessels, whether or not capable of use as a residence, are generally treated as vehicles for purposes of the fourth amendment search and seizure protections and exceptions.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM:jm